Good morning. May it please the Court. Your Honors, I would like to reserve seven minutes as I believe I established with the Clerk before the argument. Thank you. My name is Adam Webb. I'm here on behalf of Get Outdoors as to all three appeals that we have consolidated. I think since we've consolidated, it's important to remember that there are two very different types of decisions that have been appealed here. You had the San Diego case, which was 80% of outstanding. And, of course, you had the Lemon Grove and Shula Vista cases, which were 100% based on mootness. And I'll start with the San Diego case and just remind everyone that about 25 years ago, the Supreme Court told San Diego very clearly, you're not going to favor commercial over non-commercial speech on your sign regulations. And you're not going to discriminate amongst non-commercial messages in your sign regulations. Well, it turns out that the City of San Diego defied the Supreme Court, which had sent it back to the California Supreme Court, which had thrown out the city's entire sign ordinance back in 1982. And they had left in place regulations that were violative of the exact same legal principles. They had an on-site regulation that clearly favored business messages over non-commercial messages. And they had many exempt categories for favored types of content. Now, In Walks, Get Outdoors applies for its sign, and it is denied. If you'll look at page 45 of the record excerpts, please review the denial letter that came out from the city. Quote, permanent signs shall contain on-premises message only, unquote. And the city cited to section 142.1210 of the code. If you'll look at that section of the code, it is obviously violative of Metro Media. It sets up on-premise messages in a way that discriminates against off-premise non-commercial content. And it sets up numerous favored categories, and there is innumerable non-commercial messages that would not benefit in the same way. Now, in many cases that have come before this court, the cities have had non-commercial savings clauses, like in the Mesa case and others, the Ackerley-Prokalis case. Others that have allowed this court to find that this ordinance is, in effect, content neutral. But that wasn't in play here. That was not in existence here. So, Metro Media, as it pertains to this ordinance, is alive and well. And the saving clause sort of out that many cities have adopted, San Diego had not adopted. I would recommend to you two decisions that have come out since we finished our briefing in this case. KH versus Trustville, that's at 458 F3rd 1261 out of the 11th Circuit. There, the 11th Circuit upheld a permanent injunction against just this kind of provision that favored commercial over non-commercial signs. It was a unanimous decision. And it found that Metro Media, if there's not a savings clause, is alive and well and must be adhered to. Of course, this court has held that previously in the past as well. Now, the 11th Circuit has no... Just cited in your briefs or anywhere. It came out after our briefs. We submitted it in the letter that we submitted about a week ago, Your Honor. It is on page two at the top. And there was a subsequent decision in the KH case at 465 F3rd 1256, whereby the nominal damages award was upheld as well. And we were awarded attorney's fees in that case, I would note, based, of course, in part on upholding the nominal damages award. So the 11th Circuit, which is where all this aberrant standing case law comes from, is still very much on board in a unanimous 2006 decision that what happened in this case should be looked at by the federal courts and not shoved under the rug on a standing argument. Now, in Beaulieu v. The City of Alabaster, also in our recent letter and previously submitted to you as a letter of authority, the 11th Circuit held that if you're going to allow political signs, but only with a permit and only with procedures that you have to follow, but someone could go out and put up a construction sign or a real estate sign without a permit and it could be bigger, if you favor the commercial content in any way, that's still a problem. And they discarded the ordinance in that case as well. So we see that when there wasn't a savings clause in place, Metro Media still rules and the court should find... You don't have a right to erect off-site commercial billboards, right? It depends on the ordinance, Your Honor. Well, how do you have that? After Metro Media, how do you have that right? Well, what Metro Media said is if you prohibit such signs in the right way, it can be upheld. But you can't do it in the wrong way. You can't sweep within that prohibition any non-commercial content. That's exactly what San Diego persisted in doing for 25 more years. So there's a right way and there's a wrong way. When people do it the wrong way, like Trustville, or in this case, the ordinance should be invalidated. When they do it the right way, which is to say all non-commercial speech shall always be benefited wherever a sign is allowed, it can be allowed as a savings provision or a substitution clause. That gets them out. Or it can just say from the get-go that our off-premises prohibition does not apply to non-commercial content. Okay, here they didn't do that. In fact, if you go through their on-premises definition, this is at page 131 of your record excerpts. It's the section cited in denial by the city. You'll see that they define on-premises content to very much benefit on-premises activities and business activities. You couldn't put the same non-commercial content on those ads. Now, you go forward and they allow public interest messages. And this, to anyone who's read case law the last 30 years knows, it's just micromanagement of content by the government. Read what you see on 132 of your record excerpt. You know, service clubs and religious signs are allowed, but they have to relate to meetings, locations, fundraising. You can't say Jesus saves on a religious sign. You have to say what the city tells you you can say. They allow political messages about elections and ideological or political views, but not artistic messages. You can't say dance recital at the park. You can't do that. So there's all manner of non-commercial messages that are discriminated against. That is what Metro Media said you cannot do. This is the provision that was cited against my client. And therefore, this whole notion that there is no standing is patently absurd. Now, Judge Hayes found that there was no Article III standing. Of course, Article III requires an injury in fact that is traceable to the conduct complained of and that's redressable. He found there was no problem with the injury in fact based on the denied applications. There were other injuries here being forced into a discretionary process without proper procedural safeguards. The courts have held that these are injuries in fact. Indeed, just a few days ago, a panel of the Sixth Circuit reversed itself and noted that yes, someone who alleges. And just for the injury in fact, how do you establish injury in fact under Lujan when you don't have a legal right to erect billboards? Well, of course here, what the most narrow decision that ever came out in this area, which was Clearwater in the 11th Circuit, Grant State versus Clearwater, it held you can always challenge the basis of denial. Here, the basis of denial is unconstitutional, just like in Trustville. And of course, if you're enforced against you as an unconstitutional code, at the very least, we have to vindicate that interest. And a nominal damage or real damage is a... Did you plead nominal damages? Absolutely, Your Honor. And we pleaded damages, I believe, in every count of the complaint and also in the addendum clause at the end of the complaint. And obviously, when you're trying to seek constitutional vindication, that's very important. The 9th Circuit has repeatedly affirmed that such a vindication is a worthwhile pursuit and is redress. It may be $1 in your attorney's fees, but that is redress because you have vindicated a constitutional right. Now, the 11th Circuit is no great friend of billboards. And they just, in the Trustville case, affirmed that if this kind of provision is in place and we strike it, even though the signed company doesn't get its signs, in Trustville, the billboard company was not awarded signed permits. It just got vindicated that the point that had been enforced against it was unconstitutional. They awarded nominal damages of $100, and of course, attorney's fees flow therefrom. So, we see that even a very conservative court, far to the right in this issue than the 9th Circuit is, has found very recently that in a case just like this, vindication should move forward and does perform a redress. Now, on the second element, the traceability, I just want to read from the order of Judge Hayes on page 10 and 11, where he said, While Get Outdoors argues that the city denied the permits based on content-based restrictions, the court is persuaded otherwise. The city issued a letter stating its reason for denying the applications. And, as discussed below, the court finds the proffered reason is constitutional. Thus, the court finds that the plaintiff cannot show a causal connection between the injury and the conduct complained of, and thus cannot show the requisite causal nexus exists. In other words, the court looked at the merits, ruled against the plaintiff, and then went back and said there was no standing because I think it was constitutional. This is the cart before the horse in the worst way. Every case that's looked at putting the merits in with the standing determination has said you can't do that. No case that's unsuccessful would ever have been found to have standing under this test, which is, I find you're going to lose in the end, so I'm going to find you don't have Article III standing. It's crazy. It defies everything that standing is about, which is an initial investigation of whether the case should move forward. It is not a merit-based determination. Now, Section III deals with redressability. Here, the court went to the Seventh Circuit and found a case called Harp Advertising where there were two separate ordinances. There was a sign code and there was a zoning code. The sign company challenged one but not the other. The other one had a restriction that wouldn't allow them to put up the sign in question. So it's totally different than what we're talking about here where the same ordinance is at issue. Many decisions, several decisions since then that we've stated in our briefs, including one from the Seventh Circuit itself, have said Harp is very limited in its exposure. They've distinguished it. They've disfavored it. Now, it also presents a very simplistic view of what this case was about. Look at the pleadings. This wasn't just to get the sign permits. I mean, Get Outdoors has 24 leased locations in San Diego. It has an intense interest in making sure sign regulations in the city are constitutional. They're appropriate. They're not discretionary. And they asked throughout their complaint that these things be rectified, not that the permits just be issued. That might have been the focus of 5% of this complaint. Constitutional vindication was also very important. Damages were also important, as we've mentioned many times. So the idea that the only way you can get redress is to have a billboard permit issued is just overly simplistic. It is not in keeping with the law which allows all manner of vindication in a constitutional case, not just the ultimate victory on one issue. Now, I will say this also. By the court looking at part of the ordinance and saying it would have stopped the sign, that is to say your signs wouldn't have been allowed by provision regarding size, the severability issue is a state law issue. When the Supreme Court sent back to the California Supreme Court the same problems that were in place when Get Outdoors came, the California Supreme Court determined it could not save any portion of the ordinance. Now, at that time, restrictions like this size limitation were in place as well. But once again, this judge put the cart before the horse. With severability, you look at the unconstitutional provisions and decide whether you can save parts of the ordinance. This court pulled out a little section of the ordinance, said, I like this section, so I'm not going to look at any of the other sections. But that's not California's law on severability. California law, which is required that this court adhere to here, as shown in the 1982 San Diego decision, Metro Media San Diego decision, finds that if something like the on-premise problem could not be severed, the exemptions could not be severed, just like back in the 80s, then this so-called size provision would have to go as well. So you can't reverse the severability analysis. You have to start from square one. What are the challenges they can bring? Are they unconstitutional? If they are, can I sever them and leave some left behind? And in this case, that was not done at all. The court looked at one part of the ordinance, found a little section that it thought would somehow magically transform itself into its own ordinance, and stymied this entire case by saying there was no redressability. So in essence, HAARP is the only case cited, and it's very limited, and it has been limited by subsequent cases. That's a simplistic view to think that only the billboard permits were being sought in this case. There was a lot more than that being sought. And so redress in the form of nominal damages, real damages, obviously injunctive relief, equitable relief, all those things are very much available and should indeed be awarded at the end of this case. And then the reverse severability analysis violates it. Just one question. You can't just come into court and challenge a statute as unconstitutional unless, in some way, it's been applied to you to deny you a right that you otherwise claim that you have. Isn't that correct? That is usually correct, Your Honor. Why isn't that true here? If you can't get the sign, then how can you go ahead and start challenging other provisions of that sign ordinance because you can't get the sign anyway? Well, Your Honor, that is what the city wants you to think. Well, and I think that right now. I'm trying to have you explain to me why that's wrong. Well, if you look at what the Ninth Circuit's done, let's say in Desert Outdoor, you look at the ordinance, see what the sign company can challenge. And, of course, in Desert Outdoor, this Court unanimously held that they could challenge all the deficiencies in the sign ordinance. Somebody's got to. You have a commercial interest. They should be encouraged to challenge these things because no one else is going to. It's just in the abstract. Well, they had been denied the permission to keep their signs up. And Get Outdoors, in this case, has been denied permission to put up signs. So there's no abstract here, Judge. We have denied applications. But on the basis that the signs did not meet the size requirements. Isn't that right? Absolutely not, Your Honor. Now, on some, on a couple of them, your applications were returned as incomplete. I was talking about San Diego only. San Diego was a 100% content-based denial. You don't have on-premise content, so you're denied. Page 45 of the record excerpts says it all. So it is not like, Your Honor, has gleaned from the briefing of the city, which is all about a billboard ban and these other things, content neutral, time, place, and manner. That is a fiction created by the cities. And I will also go forward and say that in the other cases. Well, I think like Lemon Grove and Chula Vista, your applications were rejected, I believe, because they were incomplete. Correct. And so how does that give you standing to challenge other provisions of the city's signed ordinance? And you say other provisions. Why not be able to challenge the provision that allowed them to say it was incomplete, which was complete fabrication, Your Honor? They had so much discretion under these ordinances. I'll read to you from the Lemon Grove ordinance, for instance. It said that the city could require such other information as the community development director may require. Where courts have looked at such infinite discretion provisions for applications for speech, they have discarded them. For instance, the Hallandale decision out of the 11th Circuit. Of course, if a person that is an official in government sees someone they don't like or is wearing a T-shirt they don't like, apply for a sign, and they don't think it's going to be a sign that they like, they'll just ask for more information. That kind of discretion has to be limited by strict criteria. Now, you look in the ordinances here. They say you've got to have content, I mean, you have to have the permission of the landowner. You have to have an application form. You have to have design plans. They have criteria. And then at the end it says, and anything else our official thinks maybe he wants. And if you look at both Shula Vista and Lemon Grove, that's the kind of provisions that they had. Then they had a seven-day time limit on permitting. You understand? Seven days. Blew by those, ignored it, did not get back to our guys about the applications. About 30 days later they get an incompleteness letter. So they violated their own code in both instances where seven-day permitting was required. Now, where completeness determinations are infinite in time, the courts throw those out. Okay? They use the completeness determination to adopt a new ordinance and to try to preempt this. And I would remind the court that just last year this type of fact pattern was disfavored in the decision of Valley Outdoor versus City of Riverside where the court noted the city denied Valley's second attempt to submit application materials because according to the city's explanation, the papers imprecisely stated the shade of gray used on the billboards and the street addresses at which they were located. Whereas deficiencies of this meager variety were typically remedied by a simple correction letter, here the city returned the application materials and instructed Valley to apply anew. Perhaps not coincidentally, the city penned this rejection only one day prior to the amended ordinance's effective date. Instead of granting permits, Valley concludes the city made sure it kept the ball in the air until it could pass a new statute which it could then employ to deny permits to Valley. And of course in that case, the court decided that the standing analysis of the district court was wrong and that the sign company was allowed to challenge what it called independently enforceable provisions. What it held was the district court erred in ruling that Valley lacked standing to assert constitutional claims related to the city's conduct in refusing to process the late filed permit applications. And it went on to say, as such, there exists a tenable claim that discretionary authority of this nature over expressive activity is facially violative of the First Amendment. It cites Thomas' decision from the Supreme Court, the Young v. Semi Valley decision of this court, and the Desert Outdoor decision of this court. Given this claim, the evidence of the city's allegedly improper rejection of Valley's permit applications is indeed relevant. Quite simply, it goes to whether the city's exercise of its statutory authority to grant or deny late filed permits for expressive activity was arbitrary. That's exactly what happened here. The applications came in. They were referred to counsel. They started cranking out an ordinance. They were held past the seven-day time frame. Then they came up with bogus application requirements that had never been applied to anyone else. Look at the record in both of these cases. Not one application from any other sign applicant has been submitted that's more complete than what Great Outdoors submitted. These were big, thick applications. You'll hear in the record here that these were boxes of design plans and engineering specifications and site plans, leases with landowners, application forms, nothing incomplete at all. It is a bogus attempt to escape a reckoning in this case. What the city of Riverside held last year is you can't get away with that. That's certainly not a way to get around standing. Now, just to go back to what you said, Your Honor. You said, how could you challenge other items? I think it's clear that Get Outdoors should have been allowed to challenge those provisions that allowed them to have discretion. It's clear that when the city blew through their seven-day permitting requirement, that's just an as-applied, very simple challenge. You use your discretion to ignore your time limit and, therefore, you have a constitutional violation. The courts that have looked at that kind of situation have held that a time limit without teeth, without an affirmative entitlement to proceed with the use, is unconstitutional. Once again, the Eleventh Circuit had two cases on that point. Artistic Entertainment v. Warner Robins and Redner v. Dean. They said there has to be an affirmative entitlement to move forward. Otherwise, a seven-day time limit means nothing. Here, it does mean nothing because 30 days later, we got an incompleteness letter. Now, that letter could have come out 100 days later because there's no time limit at all on completeness determinations. You're at seven minutes. Do you want to reserve? Yes, I do, Your Honor. Thank you. Okay. Thank you. Good morning. Please, the Court. My name is Randall Morrison. I'm here from Saban and Morrison in San Diego. I represent all three of the cities in this consolidated matter, San Diego, Chula Vista, and Lemon Grove. I would like to pose a question to the Court first, and that is whether there's been … You don't get to ask us questions. Has there been a decision on the motions for the amicus briefs to be filed? Did we? I'm sorry. I didn't hear you. Has there been a motion for the amicus briefs to be filed? There's an amicus brief in each of these three cases. You know, I don't think we've seen it. We've never seen it. You've never seen the amicus briefs? We haven't, no. There's a green cover there. Oh, but we didn't act on the … No. We didn't act on the motion, I guess, though. No. I guess that … Was it objected to? I don't recall. All I remember at this moment is that we got orders from the courts in the office in San Francisco in each case saying that the amicus matter would be referred to the merits panel. Did you file an objection? Is there an objection on record? I believe so, but I'm not going to … Well, then I guess we'll let you talk about them, and if we decide that it isn't appropriate, then … All right. They're filed on behalf of the International Municipal Lawyers Association, Scenic America, California League of Cities, several other groups. In the audience today is Mr. William Brinton, who is the author or one of the authors on those amicus briefs. Also in the audience today is Bart Miesfeld from the Chula Vista City Attorney's Office. All of these cases follow a standard script, and it goes like this. Present nonconforming applications for new billboards to a city that doesn't want new billboards. This part of the scheme is intended to create the appearance of injury or standing. Then, after it's denied, as they must be, because they all are grossly nonconformant, you file a lawsuit against the city, and you try to challenge everything, and you ignore or downplay the relevant rules in the sign ordinance. Well, I guess on that point, you know, there is obviously a whole scenario going on here of which the … And I'm going to say on both sides. I'm not going to put it on one side or the other. All right. There's kind of a kabuki theater or whatever going on to put these things in front of the court. But, you know, from the city's perspectives, you know, what we get in the briefs a lot is, well, that they deny them as incomplete, but then they say you never could have got … You know, but now they argue when you get here, well, you never could have gotten it anyway. That's right. And so why if, you know, what's sort of the … Or they hold on to something, and then a new part of the ordinance comes out. So why, if these are prohibited, when someone puts in an application, why don't they just turn it back and say you're not entitled to it under the case law? The Supreme Court has said that you're not entitled to it. That's exactly what happened in the San Diego case. They were turned down upon presentation, and the declaration of … But in other ones, they were incomplete, or there was this problem, or they had size problems, but they didn't address the size problems, and now we have to find out, you know, then we deal with it all later. That's to illustrate to the court that these are intentionally nonconforming presentations. It's part of the scheme. Well, I guess, though, I guess from the standpoint that pulls the covers off the appellants. But then if I want to pull the covers off the cities, then if your legal position is that they don't have standing on certain things or you're not entitled to certain things, why isn't that, you know, why isn't that the rejection out the gate? Because we know what the litigation is going to say, and it's preventive law. It's what? It's preventive law. It's cutting off the arguments. Well, it didn't really cut it off very much, as far as we can tell. Okay. But the point of the lawsuit usually is to put most of the focus on irrelevant provisions, those which do not relate to the billboards. And the goal, of course, is to invalidate the entire scheme under the theory that if we can knock out the whole thing, then there's no valid sign regulations on the book. You must give us permits or money.  Well, why don't you articulate your best standing argument for me on this? And I think that Judge Strom had a question along those lines there. Yes. Standing has been a lead issue in many of these cases, and there are a whole bunch of them all across the country. It has been very thoroughly litigated in the 11th Circuit, and they have finally issued a magnum opus on the subject. It's called Camp v. City of Atlanta. It's actually a follow-up on a billboard case called Tanner v. Fayette. That arose because there were two conflicting decisions in the 11th Circuit, the Clearwater case and the Tanner case. One said, Clearwater said, you're restricted to the parts of the sign ordinance that actually apply to you. And the first decision in Tanner said, no, that's not correct, you can go after the whole thing. So they had on-bank hearing in the Tanner case, and then the Tanner on-bank panel didn't really get to the standing stuff. It was decided primarily on mootness, and they said we'll address standing at a later time. Well, the later time was four days later, and that was the Camp case, and it's very clear. It's a magnum opus, and I recommend it very highly. And it says, if I can shorten it down to just a sound bite, you can only challenge the parts of the regulation which actually apply to you. Other cases that have examined this issue in great detail are the Eden Prairie case. This was one of those that I noticed the court in a 28-J letter yesterday. Prime v. Brentwood, there's a line in there to the effect that if you have standing on one aspect of the sign ordinance, that doesn't carry over into the whole thing. The underlying theme here is just because you want to put up billboards does not convert you into a roving commission to scour the country, looking at all of the little details in every sign ordinance. The difficulty of writing a constitutional sign ordinance is well known. Justice Rehnquist, in his opinion in Metro Media, called the decision a virtual Tower of Babel. Judge Moody down in Florida has talked about the catch-21 or the catch-22, excuse me, of sign regulation. Well, explain to me the message substitution clauses that become a part of these ordinances after the applications. In all three cases, it was a de facto practice for a long, long time, and it was only a codification of a long-existing practice. The planners in all three of these cities know very well they cannot limit or favor any kind of non-commercial speech. You will see that in the declaration of Mr. Didion in the San Diego case. Well, is the ordinance unconstitutional without the message substitution? No, not automatically, but it certainly is designed to notify the public, to make sure that the staff understands it, and to give comfort to the court that there is no violation of the Metro Media rules number two and three, which are no favoring of commercial speech and no favoritism within non-commercial speech. But we must never forget that all three of these cases are really controlled by Metro Media rule number one. The only part of the case that has a clear majority, seven votes, says if the city wants billboards and the service of community aesthetics and safety, they certainly can do that. That's the conclusion, that issue alone decides all of these cases. All three of these cities said we don't want any more billboards. Here comes a new billboard company or the company proposing new billboards, says it doesn't matter what Metro Media says and it doesn't matter what the city council decides. We can dig into your sign ordinance and find enough little holes to bring it down. That's the whole technique here. I want to also point out to the court that the Granite State versus Fort Lauderdale decision, which again was in my 28J letter of yesterday, in that case Mr. Webb presented to the Supreme Court all of his arguments about standing, and cert was denied in that case two days ago. So if it was a serious problem, the case law that's come out of the 11th Circuit, presumably the U.S. Supreme would have taken it. I want to emphasize also that there is a false premise underlying the billboard position in all of these cases. And the false premise is that there is expressive conduct in building a new billboard. That is false. That is pure conduct. It is not speech. It is not expression of any kind. It's merely the way that these companies go into business so they can sell display space to customers, advertisers. They're not before the court. We don't know who they are. We don't know where they are. We don't know what their message may be. And all of these denials were strictly on the basis of structural and location factors. Not one of them has any relationship whatever to any kind of message. Now, the distinction between the device which might be used for communication and the message which can be placed upon it, if it is properly and it's an en banc decision affirming the trial court holding that there is no expressive conduct in constructing new news racks. We must always remember that the First Amendment exists to protect expression, not the building of structures, not the pursuit of profit. All of these cases and the position of the billboard company confuses the position of the seller of advertising. It confuses the advertising space with the messages from future customers who are not currently known. It's very much like the Field of Dreams movie. If we build it, they will come. San Diego has not allowed the construction of a new billboard in over 30 years. Since the decision in Metro Media, which really only settled the issue of whether the existing operating legally permitted billboards could stay in business, they're still there. I live in San Diego, I see them every day. And the city of San Diego decided back in 1978, we don't want billboards. There was two parts to that program. One, we want to get rid of the ones we've got because we think they're ugly, they're defiling the viewscape of the town. That part failed. The other part of the plan, no more new ones, has been in place all this time and is still there and is still valid by seven votes in Metro Media. Also, I want to emphasize the very different nature of a billboard from other kinds of signs. First of all, they are very, very large, typically 672 square feet. They're usually made of metal. The ones that are coming out of the factories today are estimated to have a useful life of 70 to 100 years. So, therefore, it is permanent pollution of the viewscape that's caused by new billboards. That's what the cities don't want. Furthermore, billboards cause a new interruption of the public view. That's in contrast to a big sign or a sign that's put on the side of a building, because the city of San Diego is a big city. The view interruption is already caused by the building. In the case of a freestanding sign at a store, a car deal or whatever, you have integration between the sign and the use on that lot. And it is that integration, where the car lot is the principal use and the sign is the accessory use, that makes that acceptable to the city. On the other hand, the billboard is a separate and principal use, which doesn't serve any other activity on the lot. Those are the principal reasons that cities don't like billboards and typically ban them. I want to say also that in all of these cities, there was a ban on billboards in the beginning, even before the billboard people came around. But the revision of the sign ordinance was to clarify the definitions, making it more legally tight in terms of the case law that's come out in recent years. Well, in the district courts, that you obviously prevailed, and you are asking this court to effect a new billboard. Do you think that any of the district courts got any of the analysis wrong and that you would interpose a different analysis? I was very pleased with all three decisions. I like to win. But that doesn't, you know, but beyond winning, did you think that the analysis was wrong in any of them and that there's an alternate way to analyze it that is more sound? No, my favorite, of course, is the San Diego decision, because it's the most thorough, and it addresses basically all of the issues that are presented in all three cases. But at this moment, I can't think of any aspect of any of the trial court decisions that I would disagree with. Well, the standing issues that you're making now, I mean, were you successful on that in the district court? Well, it's true that in San Diego, standing was the key issue, and mootness was the key issue in Lemon Grove and Chula Vista, yes. But either argument is a winner for the city, as far as I'm concerned. Well, the courts don't necessarily think that way. Courts think in terms of analysis, because these are important issues. Yes. In San Diego, we did not have a wholesale adoption of a new sign ordinance. It's a monster. We just put in explicit language about the substitution provision, the declaration of Mr. Didion makes it clear. This was a standard administrative practice for as long as he's been there, which I think is more than 20 years. It was also standard practice in both Chula Vista and in Lemon Grove. So there was no real change of behavior whatever. Now, another part of the ---- But I guess in where the court found standing and went to the merits, do you agree with that finding? On which case? Well, let me see here. San Diego got to the merits. Partially, yeah. Is there a particular passage you're concerned about? Well, I'm just, when you get to the merits, you find that a person has standing, you know, you don't get to the merits otherwise. That's right. Well, if I think the part of the San Diego decision that is on the merits is the constitutional validity of a ban on billboards, that's really beyond debate. San Diego's had that on the books for more than 30 years. It's approved by the U.S. Supreme Court 7-1. It's approved by this court in Ackerley v. Crocalis. There are many, many other cases. That's the part of the merits. There's no dispute as to the law. And if you're making the argument that there's no dispute that what they wanted to put up were off-site billboards. I think that's conceded by that. Then how, if you have no entitlement to something, how can you be damaged? My argument exactly. I don't think there's any damage anywhere. All right. Well, then respond to what his, you know, what, how do you perceive his argument and respond to what his argument is on that? On damages? I didn't hear him talking about damages. I heard him talking about unconstitutional parts of the sign ordinance. And he was talking about the basis for denying the sign applications when they were permitted, presented. The declaration of the clerk who told him, no, go away, gives several different sections. It's 127.031, 0305, 142, 1201, and a following sequence. And if you read all of those, you will see that the signs have to have either on-premise advertising or public interest messages. Now, as it's interpreted and applied and has been for decades by the San Diego administration, that means on-site commercial and the term public interest was interpreted in the same way the courts talk about non-commercial messages. Anything that's not selling goods, services, seeking clients, seeking customers, you want to put up a happy birthday sign, you want to protest the war, you want to protest this or that, go ahead. That was their standard operating procedure for a long, long time. And there was no change at all. And I don't, on the issue of damages, I don't think there are any damages anywhere in any of these three cases, because as you and Judge Strom have pointed out, they ask for something that's clearly banned, and the ban is clearly constitutional. When you only propose illegal structures, there's no reasonable or just basis for giving damages, none. Another point I want to make is that this Court's jurisprudence clearly indicates that size and height rules are separately enforceable and operate independently, even if there are some constitutional flaws anywhere in the sign ordinance. The best case on that point is Valley Outdoor v. County of Riverside, which should not be confused with Valley Outdoor v. City of Riverside. And while we're on that, Mr. Webb mentioned... You didn't deny any of them on that basis, right? Initially, no. Later, during the litigation, I had all of the administrative people go through and analyze the information they had at that time and all these applications, and prepare a detailed showing for the judge as to why all of these signs would be illegal for purely structural and location reasons, even ignoring the factor that they were to be used for off-site commercial messages. They were all too big, every single one of them. Mr. Webb mentioned the Valley Outdoor v. the City of Riverside. The controlling factor in that case was that the city's code granted an absolute right to have an after-the-fact review of construction of a billboard. And that that right for after-the-fact review, post-hoc permitting, if you will, was denied. That was the determining factor of that case. It's not present in any of these cases. Now, because the billboard companies and their counsel know that a ban on billboards is unquestionably constitutional, and they also know that if they can get a new billboard anyway, that they're going to be set up for a very healthy cash flow for many, many decades. And so they try to figure out some way to get around the Supreme Court holding and around the city council policy decision so we can put up new billboards anyway. And the way they do it is by slipping into the shoes of phantom plaintiffs. This is called over-breath standing. Well, who are they talking about? People we don't know, people who are not interested in billboards, people who may be out there someday, somewhere. It's completely imaginary. And as the standing decisions from the Eighth Circuit and the Sixth Circuit and the Eleventh Circuit have all held, the billboard companies who come in and want to challenge the entire sign ordinance, no, you can't do it. Your only right is to do it. What is your read on what prior restraint arguments they've made? It's not a restraint on speech. The prior restraint jurisdiction talks about censorship schemes. Are we going to give a parade permit to people of suitable character? That kind of thing. We're not regulating, none of these cities are regulating message content in any way. All of these decisions are on how big is the sign and where is it. These are structural decisions. It's plain zoning stuff. There's no free speech regulation whatever. On the point of over-breath standing, one passage I particularly like is Judge Hayes' decision in San Diego. He says, the plaintiff wants to examine whether the standing requirements are subject to a particular provision or to whether the alleged harm can be redressed. However, the court finds that under plaintiff's theory, the exception to the standing requirements would swallow the constitutional rule. I think that's very insightful, and it's certainly in harmony with decisions from this court, such as 4805 Convoy and Gospel Missions. It's perfectly in harmony with the decisions from the 11th, the 6th, and the 8th circuits. Now, on the point of mootness... Let me just ask one question. Am I correct that in order to bring an over-breath standing, the problem has to apply to you as well? You can't just bring an over-breath standing argument where you are not covered by the issue, is that correct? That's my understanding, and it's certainly, again, the holding that we find in 4805 Convoy, Gospel Missions, and in the standing cases that I've cited from other circuits. And they say basically, okay, if you have standing under Provision X, which in this case might be a sign size rule or might be a billboard ban, whatever, and then if that's constitutionally applied to you, but other people might be harmed as a result of the over-breath standing and their speech chilled by it, then you can be granted vicarious standing on their behalf. But there are a lot of warnings about this. It has to be substantially over-broad, and it has to be a direct restriction upon the actual expression. The best case I know about is one where... No, I'm sorry, that's on another point. On the mootness issue, the key idea here is that the sign ordinance revisions, in the Chula Vista case, that revision project, I'd been working on it for about seven months before the billboard people even brought their boxes into City Hall. And we got it on the books and in effect before the lawsuit was filed. In the Lemon Grove case, it was a quick revision, a clarification. I've already filed with the court a red line, which gives all the people in the city of Chula Vista and in San Diego was filed before the lawsuit was, excuse me, was in effect before the lawsuit was filed. In the San Diego case, it was just a few clarification provisions which were enacted after the lawsuit was filed. The crucial issue here is whether there's any indication the city intends to revert to the prior law. And in all three cases, the answer is very clearly no. Mootness is the key criterion in Chula Vista and in the San Diego case. Now, one of the arguments that often comes up in mootness is, well, just because you have the right or the power to go back to the old way, that means the case is not moot. Well, that only applies in private party disputes or where there's clear evidence that the city or the other governmental body intends to go back to the old way as soon as the litigation is resolved. None of those four arguments are true. Both factors are present here, and in fact, the exact opposite is present here. We have explicit statements of no reversion, and as counsel for each of the cities, San Diego, Chula Vista and Lemon Grove, I'm here to state on the record that none of these cities have any intention to go back to the sign ordinance provisions that were in effect earlier. Now, the last question on my outline is damages for what? Mr. Webb insists that they have a right to damages. All they did was propose oversized, illegal, outdoor advertising billboard signs. That's it. We have the seven votes, and Metro Media says that's perfectly valid. If there's any discretionary approval in any of these things, I don't see it. But even if there is something there, I don't see it. It's all directed to zoning issues, not speech. There is no regulation of expression or message content, whatever, in any of these three cases. As to the nominal damages, Mr. Webb said almost under his breath, of course, that flows to an attorney's fee award. Well, that's part of the scheme, you see. If he can get one dollar in nominal damages from a court of appeal, he's going to go right back to the city, and if he can get one dollar in nominal damages, he's going to go right back to the trial court and present a gigantic bill for the taxpayers to pay. Well, that's improper. The only case where something like that has happened is the Trustville case. He did get a ruling from the court of appeal saying he was entitled to a nominal damages award because the specific provision under which the billboards were denied was unconstitutional. When he went back to the trial court and made a fee motion, it was denied. Furthermore, to have any kind of nominal damage award, there must be a clear violation of some fundamental constitutional right. That's the rule. It is not satisfied here. There's no violation of any constitutional right in any of these three cases. There is no constitutional right to put up a billboard. Thank you very much for your attention. Please read the ordinances. This idea of a ban on billboards is a fiction created by the city's council. It's creative, but it's not true. The city of San Diego didn't define the word billboard. The Supreme Court also didn't say you can ban billboards no matter how they're defined. If a billboard is a sign with off-premise commercial and non-commercial messages, then you can't ban them. That's what Metro Media says. So there's a right way and there's a wrong way. Here, San Diego did it the wrong way. So please read the ordinances. Please recognize that the billboard is a fiction that was invalidated in Metro Media. All these after-the-fact affidavits concocted by Mr. Morrison a year and a half into the case have nothing to say about what actually happened when these people went in the city hall and applied for their sign. Now, the Ninth Circuit has never denied a sign company standing. So we're talking about an aberrant little strain of case law from the Eleventh Circuit. This Court has had a lot of sign cases. Sign companies have always been afforded standing, which makes sense. Metro Media had seven justices come down clearly on the side of a sign company being not only allowed but encouraged to bring such cases because no one without a commercial interest is going to. The Ninth Circuit is what you see around here. We've got 10,000 jurisdictions in this circuit and there's a lot of bad sign ordinances. They think it's outrageous that five cases are on appeal about bad sign ordinances. Well, I think that's the tip of the iceberg, unfortunately, because cities feel safe in violating rights and sign ordinances because a lot of decisions have come down where sign companies and those who are motivated to challenge have not been allowed to get any type of vindication. That's unfortunate. But the Ninth Circuit has never denied standing. I will say this. Judge Ferris out of Seattle was sitting by designation down in the Eleventh Circuit, visiting down the Eleventh Circuit on the Tanner v. Fayette panel, came out with his first decision and he joined the opinion that said the sign company has full standing. Show us what's wrong with this ordinance, we'll listen to you. That's the only Ninth Circuit judge who's ever sat on one of these type decisions and he came down squarely in favor of what the Ninth Circuit's always said. Sign companies should be encouraged to do this. Now, in metro media, the sign company was allowed to challenge exemptions for religious signs or public signs, political signs, because those exemptions were not something that it could benefit from. And the Eleventh Circuit has just recognized that as well in this camp decision that the cities want you to pay so much attention to. If there's an exemption for somebody, like in San Diego, for instance, there's exemptions for real estate signs and construction signs, that you can't benefit from, then of course you get to challenge that. Why aren't you on the same status as these other persons? Not those exemptions, signs that are on the spot that are refunds, we're going to have a sale today, we're going to have a fundraiser tomorrow, we're going to have construction here for the next 40 days or 30 days. They're not permanent billboard signs. In some cases, for instance, in Lemon Grove, they allowed 1,200 square foot banners, but those were temporary. Now, in San Diego, there is no time limit on the construction or real estate message signs, and they can say anything you want within those categories of content. So you see certain benefited content, obviously other content, like savings, Jesus Saves, or Dance Recital in the Park, those do not get that favoritism, and indeed were banned until the message substitution was passed a year into this case. Now, on the mootness issue, mootness is not even relevant if the same provisions are left in place. Now, that's all we're saying here. The court should go on, if you look at the Chula Vista Ordinance, it now says in section 19.60.810, I'm sorry, 800, subsection E, that the mootness is not even relevant. Such other, this is the permitting provision, such other information as planning director may reasonably request. So in other words, they can still do exactly what they did to get outdoors, which is make up the requirements as a preventative legal strategy to prevent us from getting to court until they had a new ordinance passed. This court has looked at that exact scenario last year in the city of Riverside case and said, no, that's not going to be acceptable. If you look at the Lemmon Grove Ordinance, it still, and I just, Mr. Morrison was kind enough to give the court one of these binders. If you look at page 68 of tab 2, you can see the ordinance still says that the city can ask sign applicants for, quote, such other information as the community development director may require. That's exactly what we were saying was the problem in the first place. They haven't changed it. Why would you find a case moot if they haven't changed the crux of the challenge? And what the Supreme Court said in the northeastern Florida decision is mootness isn't even an issue if they haven't changed the substance of the ordinance. And yes, they did change some important aspects and I don't expect this court to go back and look at injunctive relief against something that's been changed. But to the extent something hasn't been changed, then it needs to be dealt with. And as it goes to Lemmon Grove and Chula Vista on the permitting discretion, the completeness review, the time limits without any teeth, those problems still exist and they should be dealt with. Now, to the extent they don't exist, what it emphasizes is that there was a problem. For instance, now they have a completeness review that's allowed to be 21 days. They didn't have that when we applied. They burned past the 7-day time limit and that's a violation right there, an as-applied violation of the ordinance on its face, but they blew past the time limit and could have taken 60, 102 years to do the completeness determination. That was allowed. Now, they have a 21-day completeness review. So that emphasizes to you that there is damage. Maybe it's nominal. I've shown in the briefs we think there was real hard damages here, but there was damage and there was constitutional enforcement of an unconstitutional law against these people that allowed this delay as a preemptive legal strategy purely based on the discretion, which this ordinance should never have allowed. Thank you.
judges: Hall, Callahan, Strom